**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **VERNON J. HARRISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. CIV-04-100-SPS** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| **ex rel. Department of the Treasury** | ) | |
| **and Bureau of Alcohol, Tobacco** | ) | |
| **and Firearms,** | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER GRANTING
SUMMARY JUDGMENT IN FAVOR OF DEFENDANT**

The Plaintiff Vernon J. Harrison brought this action pursuant to the Gun Control Act

of 1968, 18 U.S.C. § 921 - § 928 (the "Act"), seeking *de novo* review of the revocation of his

federal firearms license by the Defendant, the United States of America *ex rel*. Department

of the Treasury and Bureau of Alcohol, Tobacco, and Firearms (the "ATF"). *See* 18 U.S.C.

§ 923(f)(3) ("The aggrieved party may at any time within sixty days after the date notice was

given under this paragraph file a petition with the United States district court for the district

in which he resides or has his principal place of business for a de novo judicial review of

such denial or revocation."). The only evidence before the Court is the administrative record

of the revocation proceedings; neither party offered any additional evidence. *See* 18 U.S.C.

§ 923(f)(3) ("In a proceeding conducted under this subsection, the court may consider any

evidence submitted by the parties to the proceeding *whether or not such evidence was*

*considered at the hearing* held under paragraph (2).") [emphasis added]. Further, there are

no deficiencies in administrative record that would require an evidentiary hearing.

Consequently, the Court may conduct *de novo* review of the administrative record and dispose of this appeal by summary judgment. *See, e. g., Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 n. 7 (7th Cir. 1980) ("[B]ecause the procedure for review pursuant to 18 U.S.C. § 923(f)(3) permits the district court to enter judgment on the basis of the administrative record when no substantial reason to receive additional evidence is present, the practice of the courts has been to grant judgment summarily when the material facts developed at the administrative hearing, which the court also concludes justify nonrenewal, are not substantially drawn into question by the party petitioning for review.") [internal quotations and citations omitted]. *See also Cucchiara v. Secretary of Treasury,* 652 F.2d 28, 30 n. 1 (9th Cir. 1981), *cert. denied,* 455 U.S. 948 (1982).

## A. FACTUAL BACKGROUND

Harrison is the sole proprietor of The Barter Shoppe Gun and Pawn, a firearms dealership in Henryetta, Oklahoma. He obtained his license to sell firearms in 1972, and in 1987 he was licensed to pawn them. The ATF conducted a preliminary renewal application inspection by telephone interview in May 1996. The administrative record reflects that during the interview, Harrison was informed of his responsibilities with respect to tracing requests, general record keeping requirements, right of entry, procedures for reporting thefts of firearms, and straw purchaser prohibitions, and that he had in his possession a copy of ATF Publication 5300.4, the Federal Firearms Regulations Reference Guide, commonly known as the "Green Book." The inspector recommended that Harrison's license be renewed and that a full compliance inspection be conducted in one year. For some reason, the full

inspection did not occur until April 22, 2003, after it was determined there had been no such an inspection for over ten years.

The full compliance inspection consisted of three visits to the Barter Shoppe:  (a) the initial inspection of Harrison's records and inventory for compliance with applicable gun laws and regulations; (b) personal service of the Report of Violations; and, (c) verification of reconciliation of Harrison's bound acquisition and disposition book (the "A&D Book"). The initial inspection on April 22, 2003, revealed numerous violations by Harrison, including: (i) possession of two firearms with defaced or obliterated serial numbers, in violation of 18 U.S.C. § 922(k) and 27 C.F.R. § 478.34; (ii) the transfer of four firearms when prohibiting questions were left blank on ATF Form 4473, in violation of 18 U.S.C. § 922(m), § 923(g)(1)(a) and 27 C.F.R § 478.99(c), § 478.101, § 478.121, and § 478.124(c)(1);[1] (iii) the transfer of six firearms when answers to prohibiting questions on ATF Form 4473 would prohibit a transfer, in violation of 18 U.S.C. § 922(d)(1), § 922(m), § 923(g)(1)(a) and 27 C.F.R. § 478.99(c), § 478.101, § 478.121, and § 478.124(c)(1);[2] (iv) the transfer of firearms to non-licensees without contacting the national instant background check system ("NICS") and without completing the required ATF Form 4473, in violation

---

[1]    Two of the questions related to whether the buyer had been discharged from the military under dishonorable conditions and two questions related to whether the buyer was a non-immigrant alien.

[2]    In three instances, the person completing the form was not the actual buyer.  The other three involved:  (i) a buyer who was under indictment or information for a felony or other crime with possible imprisonment for more than one year; (ii) a buyer who provided no information about indictment or information for a felony or the commission of any felony; and, (iii) a buyer who had been convicted of a misdemeanor crime of domestic violence.

of 18 U.S.C. § 922(t), § 922(m), § 923(g)(1)(a) and 27 C.F.R. § 478.101, § 478.102, § 478.121, and § 478.124; (v) failure to provide non-licensees with written notification of the Youth Handgun Safety Act brochure (ATF Form 5300.2) and to post notice thereof on the premises, in violation of 27 C.F.R. § 478.103; (vi) failure to maintain completed ATF Forms 4473 in alphabetical, chronological, or numerical order, in violation of 18 U.S.C. § 922(m) and § 923(g)(1)(a) and 27 C.F.R. § 478.101, § 478.121, and § 478.124(b); (vii) failure to retain the ATF Forms 4473 for firearms that were not transferred, in violation of 18 U.S.C. § 922(m),  § 923(g)(1)(a) and 27 C.F.R. § 478.101, § 478.121(c), and § 478.129(b); (viii) failure to include required information on numerous ATF Forms 4473, in violation of 18 U.S.C. § 922(m), § 922(t)(1), and § 923(g)(1)(a);[3] (ix) failure to properly record transactions in the A&D Book and to properly maintain the A & D Book, in violation of 18 U.S.C. § 922(m), § 923(g)(1)(a) and 27 C.F.R. § 478.101, § 478.125(e), and § 478.125(e); and, (x) failure to prepare ATF Form 3310.4 regarding multiple sales of firearms to a non-licensed individual in violation of 18 U.S.C. § 922(m), § 923(g)(3)(a) and 27 C.F.R. § 478.101, § 478.121(c), and § 478.126(a).

On April 29, 2003, Harrison was personally served with a copy of the Report of Violations.  The ATF inspector who delivered the report discussed the violations with

---

[3]     For example, Harrison failed to require some purchasers to fill out the residence address section, to sign the form (certifying that answers given on the form were true and correct), and to date it.  Also, on some forms Harrison failed to acquire, verify, and/or record the identification document, to provide a date for when the purchaser's information was transmitted to the NICS, to provide the response received from the NICS, to properly identify the firearm to be transferred, to provide the transferor's name and signature, and to date when the firearm transfer was complete.

Harrison, showed him appropriate sections in the Firearms Regulations Reference Guide, explained what was required to comply with the regulations and gave Harrison the opportunity to ask questions. Harrison indicated that everything had been fully explained by signing for the report.

The ATF inspector returned to the Barter Shoppe on June 12, 2003, to review the reconciliation of the A&D Book. A loss report was prepared for five firearms for which no correct disposition information could be determined. Harrison provided the inspector with a list of actions he had taken to correct his violations since the initial inspection. The inspector prepared a narrative report outlining events from the initial inspection through the reconciliation. He reviewed, *inter alia*, Harrison's violations and the actions taken in response thereto. The inspector concluded by recommending the initiation of proceedings to revoke Harrison's firearms license.

On August 7, 2003, the Director of Industry Operations, Dallas Field Division, issued a Notice of Revocation of License. Per Harrison's request, a hearing was set for November 13, 2003, before a hearing officer from the Seattle Field Division. At the hearing, the inspector testified in detail about the numerous violations. Harrison was given the opportunity to question the inspector about each violation and to offer any explanation for his noncompliance. He was also allowed to submit corrected ATF Forms 4473 as proof of his compliance since the initial inspection. But the corrected forms contained a number of the same mistakes cited in the Report of Violations, including: (i) using a post office box as an address; (ii) transferring firearms without obtaining an identification document to establish

residency; (iii) transferring a firearm to a resident of a state which utilized a different check system than the NICS system; (iv) missing identification information; (v) undated NICS checks; and, (vi) missing final responses from NICS.

On January 20, 2004, the hearing officer submitted a memorandum to the Director of Industry Operations, Dallas Field Division, setting out the alleged violations, Harrison's explanations for these violations and the exhibits offered into evidence by the ATF. The hearing officer concluded that Harrison had willfully violated numerous gun laws and regulations and that his firearms license be revoked. On February 19, 2004, the Director of Industry Operations, Dallas Field Division, notified Harrison that his firearms license was revoked and gave reasons therefor. Harrison then filed this action seeking *de novo* judicial review pursuant to 18 U.S.C. § 923(f)(3).

## B.  APPLICABLE LEGAL STANDARDS

Two legal standards are pertinent to disposition of this case:  (i) the standard of *de novo* review pursuant to 18 U.S.C. § 923(f)(3); and, (ii) the standard for summary judgment pursuant to Fed. R. Civ. P. 56.

### 1.  *De Novo* Review under 18 U.S.C. § 923(f)(3)

The Gun Control Act of 1968 (the "GCA"), 18 U.S.C. § 921 - § 928, "requires every person who engages in business as an importer, manufacturer, or dealer in firearms or ammunition to be properly licensed by the Secretary of the Treasury." *Trader Vic's Ltd. v. O'Neill*, 169 F. Supp. 2d 957, 962 (N.D. Ind. 2001). The licensing requirement is enforced by the ATF, *see id.*, and it "may revoke any federal firearms license if the holder of the

license violates any federal statute or regulation dealing with the firearms industry." *Dimartino v. Buckles*, 129 F. Supp. 2d 824, 827 (D. Md. 2001), *aff'd sub. nom. Dimartino v. Buckley*, 19 Fed. Appx. 114 (4th Cir. Sept. 25, 2001) [unpublished opinion], *citing* 18 U.S.C. § 923(e). *See also Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 678 (N.D. Ill. 2004) ("'Any single violation of the federal statutes or regulations controlling the firearms industry can be a basis for denying an application for a new license or revoking an existing license.'"), *quoting Trader Vic's Ltd.*, 169 F. Supp. 2d at 963. A person "whose application is denied and any holder of a license which is revoked" is entitled to "a hearing to review [the] denial or revocation[,]" if so requested. 18 U.S.C. § 923(f)(1)(2). Specifically, "if after the hearing, the [Attorney General] decides not to reverse his decision then the petitioner may seek further judicial review in the United States District Court for the district in which he resides or has his principal place of business for a de novo judicial review of [a license] denial or revocation." *Trader Vic's Ltd.*, 169 F. Supp. 2d at 963. However, "'if the court decides that the Attorney General was not authorized to . . . revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.'" *Breit & Johnson*, 320 F. Supp. 2d at 673, *quoting* 18 U.S.C. § 923(f)(3).

The *de novo* standard of review "means that the ATF's decision [to revoke a license] is entitled to no presumption of correctness and that the district court may attach such weight, if any, as it deems appropriate to the ATF's determinations and decision." *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 348 F. Supp. 2d 1299,

1306 (S.D. Ala. 2004), *aff'd* 415 F.3d 1274 (11th Cir. 2005). *See also 3 Bridges, Inc. v. United States*, 216 F. Supp. 2d 655, 657 (E.D. Ky. 2002) (ATF's "administrative decision is not clothed in this Court with any presumption of correctness."). However, "the district court may only determine whether the Attorney General's decision was 'authorized;' the selection of the penalty is a matter within the discretion of the Attorney General." *Breit & Johnson*, 320 F. Supp. 2d at 673, *citing Stein's Inc.*, 649 F.2d at 464 n. 2. The decision "may be upheld if the court concludes, in its own judgment, that the evidence supporting the . . . decision is 'substantial.'" *Id.* The district court "can consider any evidence submitted by the parties regardless of whether that evidence was submitted in the administrative proceeding." *Dimartino v. Buckles*, 129 F. Supp. 2d at 827. The firearms dealer, however, is not necessarily entitled to an evidentiary hearing before the district court; "[a] good reason to hold such a hearing must either appear in the administrative record or be presented by the party petitioning for judicial review." *Dimartino v. Buckley*, 19 Fed. Appx. at 116, *citing Stein's Inc.*, 649 F.2d at 466.

### 2. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and the evidence must be taken in the light most favorable to the non-moving party.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). With regard to *de novo* review of an administrative record, summary judgment is appropriate "when no substantial reason to receive additional evidence is present and when 'material facts developed at the administrative hearing, which the court also concludes justify non-renewal, are not substantially drawn into question by the party petitioning for review.'" *3 Bridges, Inc.*, 216 F. Supp. 2d at 657, *quoting Cucchiara*, 652 F.2d at 30 n. 1. *See also Willingham Sports,* 415 F.3d at 1277 ("Applying those standards to this case, we conclude that no reasonable factfinder could find that Willingham Sports' violations of the firearm dealer regulations were anything but willful and that, therefore, the district court properly granted summary judgment to the ATF.").

## C.  ANALYSIS

Harrison contends that his firearms license should not be revoked because he did not willfully violate the applicable regulations. He also challenges the regulatory scheme itself, *i. e.*, he contends it is unconstitutional because it purports to regulate gun sales that are purely intrastate in character and because it combines executive and adjudicative functions within the ATF. None of these contentions have merit.

### 1.  The Plaintiff's violations were willful

Harrison does not dispute that he committed numerous violations of the federal regulations applicable to gun sales. Instead, he argues that his violations were not willful

because he was unaware of many of the regulations, did not understand the ones he was aware of, and was at worst careless or negligent in failing to follow them. However, the only reasonable conclusion that may be drawn from the undisputed evidence contained in the administrative record is that Harrison willfully violated numerous regulations and his license should, as the ATF determined, be revoked.

The parties disagree initially on the appropriate standard for determining willfulness under the GCA. Harrison argues that proof of willfulness requires a showing of purposeful, intentional conduct and not mere negligence. *See, e. g., Rich v. United States*, 383 F. Supp. 797, 800 (S.D. Ohio 1974) ("The language of § 923(d)(1)(C), when read together with the word 'willfully' in § 923(d)(1)(D) immediately following, supports the conclusion that Congress was concerned with *purposeful, intentional conduct* to be punished by revocation of licenses rather than mere negligence on the part of the licensee.") [emphasis added]. However, the vast majority of courts addressing the issue have determined that "[a] violation is 'willful' . . . "if a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them.'" *3 Bridges, Inc.*, 216 F. Supp. 2d at 657, *quoting Perri v. Dep't of Treasury*, 637 F.2d 1332 (9th Cir. 1981). *See also Article II Gun Shop, Inc. v. Gonzales,* 441 F.3d 492, 497 (7th Cir.), *cert. denied*, __ S.Ct. __ (2006) ("Instead, ATF must 'prove that the petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements.'"), *quoting Stein's Inc.,* 649 F.2d at 467 ("The Secretary need only 'prove that the petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements.'"),

*quoting Lewin v. Blumenthal,* 590 F.2d 268, 269 (8th Cir. 1979); *Trader Vic's Ltd.*, 169 F.

Supp. 2d at 963 (finding a "willful violation under the GCA has been determined as one

which demonstrates that a dealer knows the proper requirements and acts in contravention

of them."); *Al's Loan Office v. United States Dep't of the Treasury*, 738 F. Supp. 221 (E.D.

Mich. 1990); *T.T. Salvage Auction Co., Inc. v. United States Dep't of Treasury*, 859 F. Supp.

977, 979 (E.D. N.C. 1994). In any event, "[b]ad purpose or evil motive is not necessary to

establish willfulness." *Breit & Johnson*, 320 F. Supp. 2d at 678-79, *citing Stein's Inc.*, 649

F.2d at 467.

Support for the less stringent willfulness standard can be found in *Bryan v. United

States*, 524 U.S. 184 (1998). In *Bryan*, the Supreme Court considered the meaning of

"willfulness" in the context of a criminal prosecution and, *inter alia*, discussed the *Stein's

Inc./Perri* definition of "disregard of known legal obligations." The Supreme Court observed

that "while disregard of a known legal obligation is certainly sufficient to establish a willful

violation, it is not necessary[.]" 524 U.S. at 198-99. Inasmuch as *Bryan* suggests that

evidence of "disregard of known legal obligations" would be sufficient proof of willfulness

under the GCA, the Court adopts the definition of willfulness set forth in *Stein's, Inc.* and

*Perri*.

Harrison apparently does not dispute *any* of the numerous violations found by the

ATF. Thus, the only issue for this Court is whether those violations were willful, *i. e.*,

whether Harrison disregarded or was plainly indifferent to known legal obligations. There

is substantial evidence in the administrative record that he did. First, there were a number

of violations Harrison claimed were "carelessness on my part" but about which he clearly knew the legal requirements. For example, he admitted transferring firearms when prohibiting questions on the AFT Forms 4473 were left blank or answered in a way prohibiting the transfer, (Tr. 28, 34, 36).[4] He also admitted not completing ATF Forms 3310.4 reflecting multiple sales of firearms to the same individual, (Tr. 135, 137-38), and on occasion, selling firearms without first conducting the required NICS check (Tr. 57-58). Even if these violations could be characterized as "carelessness," they were nevertheless willful for purposes of the GCA because they show Harrison disregarded legal requirements about which he did not claim to be ignorant. *See Willingham*, 348 F. Supp. 2d at 1311 ("It is also true the ATF never found evidence that Willingham was intentionally trying to subvert the firearms purchasing process[,]" but "these facts do not alter the inescapable conclusion that Willingham *carelessly* disregarded its recordkeeping obligations under the Gun Control Act[.]") [emphasis added]. Indeed, it is difficult to see how "carelessness" *could* be anything other than a legally culpable state of mind under the GCA, given the risks associated with guns falling into the wrong hands. *See 3 Bridges, Inc.*, 216 F. Supp. 2d at 659 ("[T]he United States Supreme Court has noted that one of the purposes of the GCA is 'to keep firearms away from the persons Congress classified as potentially irresponsible and

---

[4]     "Carelessness" is much too generous a characterization for how Harrison approached his record-keeping obligations under the GCA. For example, the ATF inspector reviewed 212 ATF Forms 4473 covering a one-year period and found *every one* was either not completed properly or not completed at all. (Tr. 76-78). This included seventeen instances of a post office box listed as an address, *even though the form itself says a post office box is not a valid address*, ten instances of prohibiting questions left blank or answered incorrectly, and six instances of identification information left blank. Harrison ascribed all of this and more to "carelessness." (Tr. 92).

dangerous.'"), *quoting Barrett v. United States*, 423 U.S. 212, 218 (1976).  The Court therefore finds that these violations were willful.

Second, the Court is unpersuaded by the argument that Harrison was ignorant of the law with regard to *any* of his violations.  By the time of the initial inspection, he had been a licensed firearms dealer for over thirty years and had operated the Barter Shoppe since 1987.  He was reminded in 1996 of many of his obligations under the GCA (including, in particular, his record-keeping requirements) as part of the license renewal process.  This background aside, Harrison's disavowals of knowledge simply do not ring true; for example, he claimed he did not know he was supposed to keep the ATF Forms 4473 on aborted gun sales (and thus threw some away), but he *did* keep many of them, which would seem to indicate an understanding of the legal requirement (Tr. 69, 97).  In any event, the record reflects that Harrison was in possession of a copy of the Federal Firearms Regulations Reference Guide no later than 1996.  As a federal firearms dealer, he had an affirmative duty to know and understand the requirements for retaining his license.  *See Trader Vic's Ltd.*, 169 F. Supp. 2d at 965 ("As a federal firearm licensee, Reid had a duty to be cognizant of the rules and regulations issued by the Bureau of Alcohol, Tobacco and Firearms and to follow those mandates."); *Breit & Johnson*, 320 F. Supp. 2d at 678.  Thus, even if Harrison was truly unaware of the regulations, or did not understand them, it would be no defense to the violations found by the ATF.  *See, e. g., 3 Bridges, Inc.*, 216 F. Supp. 2d at 658-59 (finding substantial evidence in the administrative record to support willful violation of GCA where, *inter alia*, the licensee had been a dealer for ten years and had manuals on how to comply

with the GCA). The venerable maxim that "ignorance of the law is no excuse" undoubtedly applies here. *See, e. g., Ellers, Oakley, Chester & Rike, Inc. v. St. Louis Air Cargo Services,* 984 F.2d 1108, 1111 (10th Cir. 1993) (defendant was aware of legal requirements "or, as a matter of law, is presumed to be aware of those requirements. Ignorance of the law (if, in fact, [the defendant] was not knowledgeable) is no excuse.").

Third, assuming *arguendo* that carelessness and ignorance *were* excuses with the power to exonerate, Harrison committed violations for which even these defenses cannot be claimed. For example, Harrison showed up at the revocation hearing with 119 ATF Forms 4473 prepared after the initial inspection, which he was allowed to present in his defense.[5] However, these forms themselves contained violations, some of which mirrored those found during the initial inspection.[6] Coming *after* Harrison had been inspected and made aware of his mistakes, and *with revocation of his license on the line*, these new violations support a

---

[5]     Harrison cites these ATF Forms 4473 as proof he remedied his defective record-keeping. However, corrective action taken after an inspection "is not probative as to whether violations observed in that inspection were willful." *Willingham,* 348 F. Supp. 2d at 1311, *citing T.T. Salvage,* 859 F. Supp. at 979 ("Plaintiff seeks to offer additional evidence of its actions since the warning conference and last inspection in an effort to prove that it is now in compliance with the regulations. Although the statute allows additional evidence to be presented to the court, the timing of this evidence is irrelevant under the statute because the statute focuses on the willfulness of the violations and the compliance of the firearms dealer before the license was revoked. Further, if the court were to consider such evidence, it would be rare that the ATF would ever be able to successfully revoke a license, as all the licensee would have to do is bring its dealership into compliance between the time of the revocation hearing and the *de novo* review.").

[6]     The violations included one instance of a post office box being used as an address, three instances of the licencee not verifying residency by using an identification document, the transfer of a firearm to the resident of a state that does not utilize the NICS system, two instances of identification document information being blank, three instances of the date of the initial NICS check being blank, and two instances of the final response from NICS being blank (Tr. 166-68).

finding that Harrison was plainly indifferent to his record-keeping violations, *i. e.*, that he acted willfully. *See Breit & Johnson*, 320 F. Supp. 2d at 678 ("Evidence of repeated violations with knowledge of the law's requirements has been held sufficient to establish willfulness."), *citing Stein's Inc.,* 649 F.2d at 467.

In summary, the Court finds that there is substantial evidence in the administrative record to support the conclusion that Harrison's violations of the GCA and the regulations thereunder were willful. Harrison nevertheless argues that revocation is too severe a penalty and urges the Court to remand the case to the ATF with instructions to issue a reasonable suspension instead. Such relief was granted in *Rich*, but in that case the court specifically determined that the licensee's violations were *not* willful. *See Rich,* 383 F. Supp. at 801 ("While the Secretary has shown negligence, he has not shown willful violation of statute or rules and regulations promulgated thereunder."). That is not the case here. *See Willingham*, 348 F. Supp. 2d at 1312 n. 17 ("Where a willful violation has occurred, the ATF's decision is authorized, as a matter of law; therefore, a district court cannot direct the ATF to impose a lesser sanction in that circumstance."). In any event, the Court is without authority to review the sanctions imposed by the ATF for violations of the GCA; as the *Stein's, Inc.* court observed, "under 18 U.S.C. § 923(f)(3) [the courts] may only determine whether the Secretary's decision is 'authorized.' Selecting an appropriate penalty for the violations found is a matter committed to the Secretary's discretion." 649 F.2d at 464 n. 2, *citing Nowicki v. United States,* 536 F.2d 1171, 1176 (7th Cir. 1976), *cert. denied,* 429 U.S. 1092 (1977) ("[S]anctions imposed by the Secretary of Agriculture under the Commodities Exchange Act

were not subject to judicial review."), *citing G. H. Miller & Co. v. United States,* 260 F.2d 286, 296 (7th Cir. 1958) (en banc ), *cert. denied,* 359 U.S. 907 (1959) ("[I]f the order of an administrative agency finding a violation of a statutory provision is valid and the penalty fixed for the violation is within the limits of the statute the agency has made an allowable judgment in its choice of the remedy and ordinarily the Court of Appeals has no right to change the penalty because the agency might have imposed a different penalty."). *See also Willingham*, 348 F. Supp. 2d at 1312 ("Having found that Willingham willfully violated the recordkeeping requirements of the Gun Control Act, this Court lacks authority to revisit the propriety of the sanction selected by the ATF. The relief that Willingham seeks is thus not available, as a matter of law.").[7]

### 2. Intrastate firearms transactions substantially affect interstate commerce

Harrison raises two constitutional challenges to the revocation of his federal firearms license. The first is his claim that the GCA is unconstitutional because it criminalizes conduct that does not affect interstate commerce, *i. e.*, the intrastate sale of guns. In support of this proposition, Harrison cites *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison,* 529 U.S. 598 (2000), two cases in which the Supreme Court struck down

---

[7]         Even if the Court *could* review the appropriateness of sanctions, "[u]nder section 923, the ATF may revoke any federal firearms license if the holder of the license violates any federal statute or regulation dealing with the firearms industry . . . A *single* violation is sufficient for denying an application or revoking a license." *Dimartino v. Buckles*, 129 F. Supp. 2d at 827 [emphasis in original]. *See also Breit & Johnson*, 320 F. Supp. 2d at 678 ("'Any single violation of the federal statutes or regulations controlling the firearms industry can be a basis for denying an application for a new license or revoking an existing license.'"), *quoting Trader Vic's Ltd.*, 169 F. Supp. 2d at 963. Given the breadth of the ATF discretion, and the number of willful violations by Harrison, the Court cannot say that revocation is inappropriate here.

federal legislation as beyond Congress' power to legislate under the Commerce Clause of the United States Constitution. The Court finds this argument unpersuasive.

Initially, it is worth noting that the ATF did not prosecute Harrison for the intrastate sale of guns, for any other violation of the GCA, *see, e. g.,* 18 U.S.C. § 922(m) ("It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to . . . fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder."), or indeed for *any* crime. What the ATF *did* do was proceed against Harrison to revoke his federal firearms license. Such proceedings are civil in nature rather than criminal. *See RSM, Inc. v. Herbert,* ___ F.3d ___, 2006 WL 3026344, *slip op.* at *7 n. 1 (4th Cir. Oct. 26, 2006) ("Although this is a civil action to contest the revocation of a firearms license, we construe 'willfully' in § 923(e) in accordance with *Bryan's* construction of the term in the criminal context of § 924(a)(1)(D) . . . Moreover, 'willful' violations of the Gun Control Act can lead to either a license revocation under § 923(e) or a criminal penalty under § 924(a)(1)(D)."). *See also Shyda v. BATF,* 448 F. Supp. 409, 415 (M.D. Pa. 1977) ("In a *civil* context such as this, the definition of 'willfully' is dependent upon the specific statutes involved.") [emphasis added]. Thus, whatever constitutional challenge Harrison might have would seem to be more appropriately directed to federal licensing of gun dealers, the constitutionality of which is well-settled. *See, e. g., United States v. Wilks*, 58 F.3d 1518, 1521 (10th Cir. 1995) ("[W]hen Congress originally enacted § 922 under the Omnibus Act, it regulated the interstate flow of firearms under the commerce power based upon express findings that only through adequate

Federal control over *interstate* and foreign commerce in these weapons, and over all persons engaging in the businesses of importing, manufacturing, or dealing in them, can . . . effective State and local regulation of this traffic be made possible.  In 1968, Congress replaced the Omnibus Act with the GCA. Like the Omnibus Act, the GCA restricted public access to firearms, and channeled commerce in firearms through federally licensed . . . dealers in an attempt to halt mail-order and interstate consumer traffic in these weapons."), *quoting United States v. Marchant,* 55 F.3d 509, 513 (10th Cir. 1995) [internal citations and quotations omitted].  *See also Huddleston v. United States*, 415 U.S. 814, 825 (1974) ("[I]t is apparent that the focus of the federal scheme is the federally licensed firearms dealer, at least insofar as the Act directly controls access to weapons by users.  Firearms are channeled through dealers to eliminate the mail order and the generally widespread commerce in them, and to insure that, in the course of sales or other dispositions by these dealers, weapons could not be obtained by individuals whose possession of them would be contrary to the public interest.").  But in any event, the fact that the GCA may regulate gun sales that are purely intrastate in character does not render it unconstitutional under the Commerce Clause.[8]

---

[8]     It is arguable that Harrison lacks standing to make such an argument, inasmuch as he has not proven that *all* his gun sales were in fact intrastate.  *See, e. g., Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973) ("[A] person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.").  For example, as discussed above, the address information was missing from a number of his ATF Forms 4473.  *See supra* at p. 4, note 3.  This legitimately raises the question whether he has engaged directly in interstate commerce by selling guns to out-to-state buyers.  In any event, a sufficient nexus to interstate commerce can be established by Harrison's possession of guns manufactured outside the State of Oklahoma. (Tr. 21).

As the Supreme Court noted in *Lopez*, "Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i. e.*, those activities that substantially affect interstate commerce." 514 U.S. at 558-59 [internal citations omitted]. The intrastate sale of guns is one of those activities. *See, e. g., United States v. Haney,* 264 F.3d 1161, 1170 (10th Cir. 2001), *cert. denied,* 536 U.S. 907 (2002) ("Even purely intrastate possession and transfers of machineguns have a substantial effect on interstate commerce. As noted above, Congress has concluded that regulating intrastate possession and transfers is necessary to control the interstate market in these weapons. Moreover, Congress has found that the interstate market itself is significant. It follows that intrastate possession and transfers have a substantial effect on interstate commerce."). *See also Navegar v. United States,* 192 F.3d 1050, 1059 (D.C. Cir. 1999), *cert. denied,* 531 U.S. 816 (2000) ("Manufacture, transfer and possession are activities that not only substantially affect interstate commerce . . . but are also the necessary predicates to such commerce."). Congress may therefore regulate the intrastate sale of guns as an activity that substantially affects interstate commerce. *Id.* at 1058 ("Supreme Court precedent makes clear that the transfer of goods, even as part of an intrastate transaction, can be an activity which substantially affects interstate commerce."), *citing Lopez,* 514 U.S. at 560-61, *citing Wickard v. Filburn,* 317 U.S. 111, 127-28 (1942) (noting that farmer's private use of homegrown wheat substantially affected interstate commerce). *See also Barrett*, 423 U.S. at 218 ("The very structure of the Gun Control Act demonstrates that Congress did not intend merely to restrict interstate sales but sought broadly to keep firearms away from the persons Congress

classified as potentially irresponsible and dangerous . . . Thus, § 922(d) prohibits a licensee from knowingly selling or otherwise disposing of any firearm (whether in an interstate or intrastate transaction[)] to the same categories of potentially irresponsible persons . . . We note too, that other sections of the Act clearly apply to and regulate intrastate sales of a gun that has moved in intrastate commerce. For example, the licensing provisions . . . apply to exclusively intrastate, as well as interstate, activity . . . [A] licensee may not knowingly sell a firearm to any prohibited person, even if the sale is intrastate. "), *citing Huddleston*, 415 U.S. at 833 (noting the licensing provisions "were to reach transactions that are wholly intrastate . . . on the theory that such transactions affect interstate commerce.").

Neither *Lopez* nor *Morrison* suggests that regulation of intrastate gun sales renders the GCA unconstitutional under the Commerce Clause. In *Lopez*, the Supreme Court held the Gun-Free School Zones Act of 1990 (which made possession of a firearm within 1,000 feet of a school a federal offense) unconstitutional, reasoning that the prohibited intrastate conduct was not an activity that substantially affected interstate commerce. 514 U.S. at 560-61. The *Lopez* court observed, *inter alia*, that the statute was "not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id*. at 561. In *Morrison*, the Supreme Court held the Violence Against Women Act (which provided a civil remedy for victims of violence motivated by gender) unconstitutional, rejecting "the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." 529 U.S. at 617. Both cases turned in large part upon the fact that the

legislation in question purported to regulate activity that was not economic in nature.  *See id.* at 610-611 ("[A] fair reading of *Lopez* shows that the noneconomic, criminal nature of the conduct at issue was central to our decision in that case.  *Lopez's* review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor.") [internal citations omitted]. By contrast, the intrastate sale of guns is clearly economic activity.  The Court therefore rejects Harrison's constitutional challenge to the GCA under the Commerce Clause.

### 3.  The Defendant was not denied due process

Harrison's also raises a constitutional challenge to the revocation of his firearms license based on the consolidation of enforcement functions in the ATF, *i. e.*, he contends that the ATF's dual role as prosecutor and adjudicator with respect to the enforcement of its regulations creates an appearance of impropriety that cannot be cured by *de novo* judicial review and therefore offends the Due Process Clause of the Fifth Amendment to the United States Constitution.  The Court finds no merit in this contention.

Considering a similar argument in *Withrow v. Larkin*, 421 U.S. 35 (1975), the Supreme Court observed as follows:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias

or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.* at 47. The *Withrow* court concluded that "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation[.]" *Id.* at 58. *See also Marcello v. Bonds*, 349 U.S. 302, 311 (1955) (holding due process was not violated when "the special inquiry officer was subject to the supervision and control of officials in the Immigration Service charged with investigative and prosecuting functions."); *Jonal Corp. v. District of Columbia*, 533 F.2d 1192, 1196 (D.C. Cir.), *cert. denied*, 429 U.S. 825 (1976) (applying *Marcello v. Bonds* "to stand for the general proposition that the combination in administrative procedures of judging with prosecuting or investigating functions is not, per se, a denial of due process.").

In this case, Harrison has shown nothing that would overcome the presumption of honesty and integrity of ATF's investigatory and adjudicative officers. Nor has he shown anything else that would call into question the fairness of the administrative proceedings below. The initial inspection appears to have been conducted fairly, and Harrison does not suggest otherwise. He was afforded notice of his violations and given more than one opportunity to correct them, *i. e.*, the inspector returned twice to the Barter Shoppe before recommending the commencement of revocation proceedings. He requested and was afforded a hearing, which was conducted by a hearing officer from a disinterested ATF regional office. He was represented by counsel and allowed to present evidence in his own

behalf, some of which was found to be persuasive.[9]  The hearing officer recommended detailed findings and conclusions supporting revocation of Harrison's license, which the Director of Industry Operations ultimately adopted.

Revocation of a federal firearms license is undoubtedly a harsh sanction (indeed, it is the ultimate sanction), but as discussed above, it is within the ATF's discretion to revoke a license for even a single willful violation of the applicable statutes and regulations. Harrison had substantially more than a single willful violation.  The Court finds no indication of any unfairness in the administrative proceedings below, and Harrison's due process argument is therefore precluded by *Withrow*.  *See DiMartino v. Buckles*, 129 F. Supp. 2d at 832 ("Petitioners claim that the combination of investigatory and adjudicatory functions in a single body, the ATF, violated their Due Process rights under the Fifth Amendment to the United States Constitution. The Supreme Court has squarely held that, without more, the mere combination of investigatory and adjudicatory functions in an administrative body is not a violation of Due Process."), *citing Withrow,* 421 U.S. at 54-55.  *See also DiMartino v. Buckley,* 19 Fed. Appx. at 116 ("The district court correctly determined that this argument was foreclosed by the Supreme Court's holding in *Withrow v. Larkin*[.]") [affirming the District Court's decision].

---

[9]      For example, the inspector found that Harrison failed to maintain for sale or distribution secure gun storage or safety devices in violation of 18 U.S.C. § 923(d)(1)(g).  Harrison disputed this finding, and the hearing officer concluded that Harrison had not violated the statute. The Director of Industry Operations agreed and declined to revoke Harrison's license on this basis.

## D.  CONCLUSION

In summary, the Court finds that there is substantial evidence in the administrative record for the ATF's conclusion that Harrison willfully violated provisions of the GCA and regulations promulgated thereunder, and that the ATF's decision to revoke Harrison's firearms license was therefore authorized.  The Court further finds that Harrison's constitutional challenges to the GCA and the ATF's enforcement authority thereunder are without merit.  Accordingly, the ATF's Motion for Summary Judgment (styled "Response Brief of Defendant") [Docket No. 19] is hereby GRANTED, and the ATF's decision to revoke Harrison's federal firearms license is hereby AFFIRMED.

**IT IS SO ORDERED** this 9th day of November, 2006.


_____  _____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**